IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

SHELTER MUTUAL INSURANCE COMPANY                                    PLAINTIFF

VS.                                               CIVIL ACTION NO. 3:03CV154 HTW-LRA

FREDERICK K. RAND                                                   DEFENDANT

VS.

JULIA WILLIAMS AND STUART DAILY,
Individually, and as wrongful death beneficiaries of
RONALD SCOT DAILEY                                                  RESPONDENTS

## MEMORANDUM OPINION AND ORDER

This matter came on for bench trial under Rule 52 of the Federal Rules of Civil Procedure.[1] The plaintiff Shelter Mutual Insurance Company (hereinafter "Shelter") filed this lawsuit seeking a declaratory judgment under Title 28 U.S.C. §§ 2001 and 2002[2] to

---

[1] Rule 52(a) of the Federal Rules provides in pertinent part that, "[i]n all actions tried upon the facts without a jury or with an advisory jury, the court shall find the facts specially and state separately its conclusions of law thereon, and judgment shall be entered pursuant to Rule 58; ...".

[2] Title 28 U.S.C. § 2201 provides in part that, "(a) [i]n a case of actual controversy within its jurisdiction, except with respect to Federal taxes other than actions brought under section 7428 of the Internal Revenue Code of 1986, a proceeding under section 505 or 1146 of title 11, or in any civil action involving an antidumping or countervailing duty proceeding regarding a class or kind of merchandise of a free trade area country (as defined in section 516A(f)(10) of the Tariff Act of 1930), as determined by the administering authority, any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such."

Title 28 U.S.C. § 2202 provides that, "[f]urther necessary or proper relief based on a declaratory judgment or decree may be granted, after reasonable notice and hearing, against any adverse party whose rights have been determined by such judgment."

1

determine coverage, if any, under a homeowner's policy issued by Shelter to the defendants Frederick Rand and his wife, Melissa Rand. The basis of the complaint filed by Shelter is a boating accident[3] involving Frederick Rand who was operating a 19' Bayliner boat with a 130 horsepower engine at the time of the accident in question which resulted in the death of Ronald Scot Dailey. The wrongful death beneficiaries of Ronald Scot Dailey then brought a lawsuit against Frederick Rand. The Rands sought indemnity and a defense from Shelter which Shelter denied, filing the instant case for declaratory judgment on the issue of coverage. This court, having read the submissions of the parties and having heard argument at a bench trial, finds that Shelter was not obligated under the policy of insurance in question either to indemnify the Rands or to provide them a defense.

## **PERTINENT FACTS**

Frederick and Melissa Rand were insured at the time of this accident under homeowner's policy no. 23-71-4688269-1 issued by Shelter Mutual Insurance Company, with personal liability limits of $300,000. Frederick Rand looked to Shelter to provide him with indemnity and legal representation in the wrongful death suit filed against him by the wrongful death beneficiaries of Ronald Scot Dailey.

The Rands believed at the time of the accident that the Shelter homeowner's

---

[3] Fredrick Rand acknowledges that he was piloting his Bayliner boat down the Pearl River with his wife and two minor sons when Ronald Scot Dailey dove into the water directly in the path of the Bayliner. Rand says and he was unable to avoid striking Scot with his boat. The propellor of Mr. Rand's boat struck Scot behind his left ear and his left arm. Despite the rescue attempts to save Scot, he was pronounced dead on arrival at the Madison County Medical Center in Canton, Mississippi.

2

policy extended liability coverage for the accident involving the Bayliner boat. Shelter, however, denies that it had any duty either to indemnify or to defend Frederick Rand, contending that the Shelter homeowner's policy issued to the Rands did not provide coverage for the Bayliner boat, particularly when the Rands' boat had a 130 horsepower engine, and the largest engine covered by the policy was 50 horsepower.

During the course of this lawsuit, the Rands have contended that coverage should be extended to the underlying boating accident for three reasons. First, they say that the exclusionary policy language contained in the homeowner policy was vague and ambiguous and should be construed in favor of the insureds. Secondly, say the Rands, the insureds never received a copy of the policy; so, Shelter must forfeit the right to rely on the exclusionary language contained in its policy. *See National Life and Accident Insurance Company v. Prather*, 158 So. 881 (Miss. 1934). Thirdly, say the Rands, Matt Thames, a Shelter agent acting within the scope of his apparent authority, told them that the boat would be covered under their standard homeowner's policy without the need for a separate watercraft policy of insurance.

Shelter responds that it had no duty to indemnify and defend Frederick Rand in the wrongful death lawsuit because the homeowner's policy provided no coverage for the Bayliner boat under the circumstance of this case. Shelter further responds that the policy of insurance issued to the Rands was actually delivered to them subsequent to their taking out the policy of homeowner's insurance, but prior to the boating accident. Thus, Shelter contends that the Rands either knew or should have known what the policy covered prior to the boating accident. Additionally, Shelter denies that its agent Matt Thames made any oral representations to the Rands regarding coverage of the

3

Bayliner boat which were contrary to the provisions of the homeowner's policy.

## CONCLUSIONS OF LAW

### I. THE SHELTER POLICY SPECIFICALLY EXCLUDES COVERAGE FOR THE BAYLINER BOAT.

Shelter submits the applicable exclusionary language in the Rands' policy which provides as follows:

**EXCLUSIONS - SECTION II**

Under Personal Liability and Medical Payments to Others, **we** do not cover:

1. **bodily injury** or **property damage** arising out of the ownership, maintenance, use or entrustment of:

    (d) watercraft not located on the **insured premises:**

       (1) owned by or rented to an **insured** if it has inboard or inboard-outdrive motor power of more than 50 horsepower.

The interpretation of insurance policy language, argues Shelter, is a question of law. *Johnson v. Preferred Risk Auto. Ins. Co.*, 659 So. 2d 866, 871 (Miss. 1995). Generally, under Mississippi law, says Shelter, when the words of an insurance policy are plain and unambiguous, the court will afford the words their plain, ordinary meaning and will apply them as written. *Thomas v. State Farm Fire and Cas. Co.*, 856 So. 2d 656 (Miss. Ct. App. 2003).

Shelter cites *Allstate Insurance Company v. Faltus*, 427 F.2d 128 (5th Cir. 1970), a watercraft coverage decision in favor of Allstate which found that coverage was excluded under the terms of the policy because the accident occurred away from the premises of the homeowner while the boat was being powered by a motor having 35

4

horsepower which exceeded the 25 horsepower limit under the policy.[4] In American Jurisprudence, Second Edition, which was updated in May of 2007, the *Faltus* decision is cited generally, along with several other cases dealing with watercraft exclusions, noting that, "[w]hether a particular injury or claim is within or excluded from such a policy depends on a construction of the specific terms and provisions thereof in light of the circumstances," updating *Construction and effect of provision of homeowner's, premises, or personal liability insurance policy covering or excluding watercraft*, 26 A.L.R. 4th 967.

Therefore, because the policy in question excludes coverage for "bodily injury. . . arising out of the ownership, maintenance, use or entrustment of . . . (d) watercraft not located on the insured premises (1) owned by or rented to an insured if has a inboard or inboard-outboard drive motor power of more than 50 horsepower, and because the accident in question on the Pearl River away from the insured premises, Shelter submits that there is no coverage under its policy and no duty to provide Frederick Rand a defense against the claims made by Julia Williams and Stuart Dailey as a result of the boating accident.

### II. THE RANDS RECEIVED THEIR SHELTER HOMEOWNER'S POLICY. PRIOR TO THE BOATING ACCIDENT.

Shelter responds to the Rands' contention that they never received a copy of their policy, noting that under cross examination both Frederick Rand and Melissa Rand

---

[4]Shelter further notes decisions in other jurisdictions which have interpreted the watercraft exclusion language contained in the instant policy to exclude any boating accidents away from the premises with an inboard/outboard power engine exceeding 50 hp. *See Allstate v. Gutenkauf*, 431 N.E.2d 1282 (Ill. 1981); *Green v. Merrill*, 308 So.2d 702 (Ala. 1975); *Torbert v. Anderson*, 222 N.W.2d 341 (Minn. 1974).

testified that, subsequent to the boating accident, they looked through their personal effects, including other insurance documents, and located the Shelter homeowner's insurance policy, which they referred to as a pamphlet. Thus, says Shelter, the Rands' testimony makes clear that they received their homeowner's policy, the pamphlet, soon after they obtained their homeowner's coverage, and before the boating accident, could read its provisions, and could determine what coverage the policy provided.

### III. THE SHELTER AGENT DID NOT BIND COVERAGE FOR THE BOAT ON JUNE 1, 2002.

The Rands contend that Shelter agent Matt Thames bound over coverage under the homeowner's policy they had with Shelter at the time of the boating accident in June, 2002. However, the Rands have acknowledged being told by Thames that so long as the Bayliner boat was kept at their home it would be covered under the homeowner's liability policy while in use. This is consistent with the policy provision stating that no coverage would be provided for watercraft not located on the insured's premises.

Shelter submits that both Frederick and Melissa Rand have said on cross examination that they had a watercraft on their premises at the time Matt Thames initially came to their home to bind coverage under the homeowners policy. Further, says Shelter, the Rands have sworn under oath throughout discovery that Mrs. Rand had a conversation with Thames concerning the boat on the Rands' premises at the time Thames first visited the Rands' home on August 21, 2001. According to the Rands, Thames said that the boat would be covered. Of course, according to the terms of the homeowner's policy, a boat kept on the premises would be covered, and, in the Rands' submissions to this court, they acknowledge being told by Thames that, "so long as the

boat was kept at her home it would be covered under the homeowner's liability policy... ." However, this is not the end of the matter. Shelter next submits that independent testimony and documentary evidence given in the bench trial before this court established that the Rands did not own a boat of any type when Matt Thames came initially to their home and filled out the application for homeowner's insurance. Therefore, says Shelter, it was impossible for Mrs. Rand to have engaged in a conversation with Thames about coverage for a watercraft on the Rands' premises the very same day the homeowner's policy in question was procured.

Moreover, says Shelter, according to Thames' testimony, he was not contacted concerning coverage for the Rands' Bayliner boat until after June 1, 2002, the day the boating accident occurred. Thames also testified that he did not inform Mr. Rand or Mrs. Rand that their current homeowner's policy provided coverage for the boat they had purchased. Finally, Thames testified that it was his practice to sell an additional policy to homeowners for boats or other watercraft which would come under the exclusion in Shelter's policy.

Shelter concludes that the Rands are persons who previously were licensed by the State of Mississippi to sell life, property, and/or casualty insurance. So, says Shelter, when considering the testimony of the Rands on the issue of an agent's authority to bind coverage, this court should take into account that the Rands are persons who are knowledgeable of such matters as insurance policy language and provisions. *See Nichols v. Shelter Life Ins. Co.*, 923 F. 2d 1158 (5th Cir. 1991) (noting that it may be reasonable for persons or lower educational levels to place reliance on information directly contrary to the language of a policy).

**CONCLUSION**

The exclusionary language contained in the Shelter policy is clear and unambiguous. Where no ambiguity exists, this court must accept the plain meaning of the instrument in question as the intent of the parties. *Fradella v. Seaberry*, 952 So.2d 165, 171 (Miss. 2007). Consequently, this court finds that the homeowner's policy in question did not provide coverage for watercraft being operated by the Rands at the time of the accident on the Pearl River which resulted in Ronald Scot Dailey's death.

In light of all the foregoing, this court is persuaded that Shelter provided the Rands a copy of their homeowner's policy and may rely on the exclusionary language of the policy. Finally, this court finds that Shelter agent Matt Thames did not bind the coverage sought by the Rands for the Bayliner boat by any alleged representations to them.

Therefore, this court finds for the plaintiff Shelter Mutual and against the defendant Fredrick Rand. The homeowner's policy in question, #23-71-004688269-001, provides no coverage for the operation of the Rands' Bayliner boat in the Pearl River which resulted in the death of Ronald Scot Dailey.

**SO ORDERED**, this the 24th day of March, 2010.

                                                 s/ **HENRY T. WINGATE**
                                                 **CHIEF JUDGE**
                                                 **UNITED STATES DISTRICT COURT**

Civil Action No. 3:03-CV-154 HTW-LRA
Memorandum Opinion and Order